## James Read & al. *versus* The Frankfort Bank.

If the charter of a corporation be legally repealed by the legislature, as it respects that corporation, in accordance with a provision in the charter reserving that right on a certain contingency, a creditor of the corporation can interpose no valid objection to the constitutional power of the legislature, on the ground that such act would prevent the prosecution of the remedy of the creditor to collect his demand by a suit against the corporation, then pending, where property had been attached.

The remedy for a party may be changed by the legislature, although such change may affect suits then pending, without contravening the constitution of the United States.

The mere service of a copy of the writ, in a suit then pending, upon the receivers of the effects of an insolvent bank, is not a compliance with the provisions of the act of April 16, 1841, that creditors must bring in and prove their claims, if they would receive their share of the effects.

Assumpsit against the defendants as indorsers of two promissory notes. The plaintiffs introduced the proof necessary to charge the defendants as indorsers.

The defendants thereupon contended that the action could not be maintained by reason of the provisions of the additional act of April 16, 1841, repealing the charter of the Frankfort Bank, which required all claims to be presented and proved before the receivers, appointed to take charge of the effects of the bank, prior to July 1, 1842, as it had not been shown, that

the plaintiffs had complied with such provision. The plaintiffs then proved, that the action was commenced Feb. 2, 1841, and that property was attached on the same day. And that on June 17, 1841, a copy of the writ was duly served upon the receivers.

SHEPLEY J. who presided at the trial, ruled that the service of the writ upon the receivers was not such presentation of the claim and proof, as the statute required, and that the action could not be maintained. The plaintiffs filed exceptions.

*Hathaway* and *Hubbard*, for the plaintiffs, contended that as the action was commenced before the repeal of the charter, and the debt secured by an attachment of property, their right became vested, and that the legislature had no constitutional power to pass acts affecting their rights injuriously. Metc. & P. Dig. 555; 8 Mass. R. 43; 2 Gallis. 141; 2 Greenl. 294; 3 Greenl. 326; Story's Com. on Const. c. 34.

They also contended, that the service of the writ upon the receivers was in substance a compliance with the requirements of the statute in relation to proof of the claim.

*W. Kelley* and *Merrill*, in the defence, said that the legislature reserved in the charter the right to repeal it, on the happening of a certain event, which it is admitted has taken place in this case. This is clearly a constitutional act. When the corporation ceased to exist, the action was gone. This is decisive against the present case. The legislature, however, did provide a remedy by taking possession of the effects of the corporation, and making an equal distribution thereof among all the creditors, who would bring in and prove their debts. The plaintiffs have less ground for setting up a claim to vested rights, than the creditor who has attached the property of an insolvent man, who dies during the pendency of the suit.

Merely giving the receivers notice of the suit, cannot be considered as presenting and proving the claim.

The opinion of the Court was prepared by

TENNEY J.—By the statute of March 29, 1841, c. 139, the act incorporating the Frankfort Bank was repealed, and

provision made for the appointment of receivers, who were required, when qualified to act, to demand and receive of the officers of the Bank the property to the same belonging. On the 16th of April, 1841, an additional act was passed requiring all creditors, in order to entitle themselves to a distributive share of the assets, and to prevent their claims from being barred, to exhibit and prove them to the receivers on or before the first day of July, 1842.

This action was commenced and an attachment of property made previous to the repeal of the charter of the Bank; and it is insisted that thereby a right became vested in the plaintiffs to proceed with the suit under the laws, which were in force at the time of its commencement, and that the same cannot constitutionally be affected injuriously by any act of the legislature. But if the repeal was not in contravention of the constitution, it is contended that the plaintiffs have substantially complied with the statute of the 16th of April by causing a copy of the writ to be served on the receivers on the 17th of June, 1841, a time long before that, when the claim was to have been barred, if the same had not been exhibited and proved to the receivers.

By the act of 1831, c. 519, entitled "an act to regulate Banks and Banking," § 32, the legislature reserve to themselves, in cases therein named, after certain proceedings, the right to declare charters of Banks forfeit and void. The Frankfort Bank, incorporated after the enactment of this statute, was subject to its provisions, which were a part of its charter. It is not contended that the Bank had not exposed itself, so that its charter was properly revoked, or that all the necessary steps were not taken by the legislature agreeably to the general statute of 1831, previous to the repealing act; and in default of evidence to the contrary, it must be so presumed. Neither is it contended, that the Bank did not submit to the provisions of the repealing statute, acknowledged the authority of the receivers, and surrendered to them its books and its property.

After this, the creditors of the Bank cannot object to the constitutionality of the Act, dissolving the corporation, when

Read *v.* Frankfort Bank.

it was done for causes, which by the charter were sufficient for the purpose, and when the repeal was conclusive upon the Bank. Indeed, it is not seen how *any* objection can be made by those, who had no other connexion therewith, than that of being its creditors. Whoever entered into contracts with it, exposed himself to losses which might arise from its dissolution, as he would with natural persons, by their death. No security was provided in the charter, or other statute, against such an exposure to injury.

The Bank having ceased to exist, excepting so far that the receivers could prosecute any suit pending in its name; and could use the name of the Bank in any suit, which might be necessary to enable them to collect any of the debts due to the Bank, there is no party whom the plaintiff can prosecute or take judgment or execution against, unless it be in a court of equity. The Bank as such have no longer the power to sue or to be sued; the receivers alone are the successors of the corporation, and they take all the property for the purposes specified in the act of repeal, and for those purposes only. Their appointment and the power given to them in no wise infringe the previously existing rights of the plaintiffs. It is by and through them, that the property is to be made available in the payment of the debts against the Bank. If the receivers had not been appointed, the plaintiffs could have no better prosecuted their suit, than they are now able to do. The repeal of the charter has presented the obstacle to their further proceedings, by dissolving the party against whom they had commenced them.

The obligation of the contract between the plaintiffs and the Bank was not impaired by the repeal of its charter, but the mode of obtaining indemnity for its violation was changed. The bank was created by the legislature, and by the charter, there was no provision made for the prosecution of suits against it, if that charter should be declared by the same power forfeit and void; but a mode has been provided in the repealing act, by which creditors are enabled to obtain satisfaction for their claims, to the extent of the means existing therefor. A

remedy for a party may be changed or wholly taken away by the legislature without contravening the constitution of the United States. *Thayer* v. *Seavey,* 2 Fairf. 284; *Oriental Bank* v. *Freese,* 18 Maine R. 109. And such a change may constitutionally affect suits pending at the time, when it is made.

Have the plaintiffs saved themselves from the operation of the limitation contained in the act of April 16, 1841? We are satisfied, that they have not; though we do not perceive how a decision of that question can influence this case. For if we have taken the correct view of the effect of the act of repeal, this action can be no farther prosecuted, in any court. The claim of the plaintiffs in this case is upon two notes of hand indorsed by the Bank. The writ was the legal process to obtain a judgment upon this claim. In order to bring the affairs of the Bank to a close within the time prescribed, the receivers were to be made satisfied of the existence of the demands and the legal title of the claimants to payment. The writ could not tend in the least to do either, and the service of the same by a copy, was not such an act as to take the case from the effect of the limitation.

*Nonsuit confirmed.*