CITIZENS' BANK OF HUMPHREY V. FREDERICK FROMHOLZ.

FILED MARCH 19, 1902.     No. 11,358.

Commissioner's opinion, Department No. 2.

1. **Bank:** PRESIDENT AND CASHIER: DEPOSIT: COLLECTION FOR CUS-
TOMER: DENIAL OF AUTHORITY: LIABILITY. When the president
and cashier of a bank, acting in his official capacity for such
bank, collects money for and places it on deposit in such bank
to the credit of one of its customers and pays out of such
deposit notes due to the bank from the customer and checks
drawn by him against such deposit, the bank can not, for the
purpose of escaping liability to its customer for the mistakes
or malfeasance of its president and cashier, deny his authority
to represent it in this kind of a transaction.

2. ———: DEPOSITOR: STATUTE OF LIMITATIONS: DEMAND. As be-
tween a bank and one of its depositors, the statute of limita-
tions does not begin to run in favor of the bank, until a demand
has been made for the money on deposit.

3. **Cross-Examination:** PRACTICE: DISCRETION OF COURT. The prac-
tice of permitting two counsel on the same side to examine a
witness is not commended as a rule, but the privilege never-
theless rests solely within the discretion of the trial court.

ERROR from the district court for Platte county. Tried
below before HOLLENBECK, J.   *Affirmed.*

*McAllister & Cornelius,* for plaintiff in error.

*Talbot & Allen* and *Julius S. Dittmar, contra.*

OLDHAM, C.

This was an action by a depositor against the Citizens'
Bank of Humphrey, Nebraska, to recover back the sum
of $578.20 alleged to have been erroneously charged to
plaintiff's account by the defendant bank on the 30th day
of May, 1893. The suit was not filed until the 24th day of
September, 1898. Plaintiff, however, alleged in his peti-
tion that he did not discover the mistake in the overcharge
of his account until September, 1898. The defendant bank
answered plaintiff's petition with a general denial and a
plea of the statute of limitations. Plaintiff replied to this
answer with a general denial. There was a trial of the

issues thus joined to a jury and a verdict for plaintiff. Judgment was entered on the verdict, and defendant brings error to this court.

The facts in this case, as shown by the bill of exceptions, are that the plaintiff in this cause of action was a farmer living near Humphrey, and was a customer of the defendant bank for about four years. It appears that in January, 1893, he was considerably indebted to the bank on notes which the bank held against him, and also on some overdrafts; that at the time he was preparing to remove to the territory of Oklahoma; and that he came into the bank and had a settlement for his notes and overdraft, and paid them by secured notes which he executed for that purpose. It also appears that plaintiff removed to Oklahoma, and that he left some notes for collection with the defendant bank, and that he also authorized the president and cashier of the defendant bank to negotiate a sale of his lands in Platte county, Nebraska. It appears that this sale was negotiated, and the proceeds of the sale were placed to his credit in the defendant bank by the cashier, and that the notes that he owed to the bank were taken out of the proceeds of this sale. It also clearly appears that the bank charged his account with a note of $500, and interest thereon, which all amounted to $578.20, and that this charge was made on the 30th day of May, 1893, and that this was one of the notes that had been settled for by plaintiff in January, 1893,—so that the question of the mistake in the account was clearly and unmistakably proved. The bank did not introduce its books in evidence and appeared to rely solely on the statute of limitations as a defense. It seemed, by inference, to have contended that plaintiff's account at the bank was kept by the president and cashier, E. A. Stockslager, as agent for plaintiff, and that the bank, as such, had no interest in this matter. To sustain this theory, it contends that Stockslager collected plaintiff's money and sold his farm and made the deposit for plaintiff, and that the checks which plaintiff drew against his account were mailed from

Oklahoma to Stockslager. This may be, and was, true; but Stockslager was the president and managing officer of the defendant bank and when he collected notes for plaintiff he credited plaintiff with the collection on the books of the bank. When he received a check from plaintiff, it was paid out of the money plaintiff had on deposit in the bank and charged to him on the books of the bank. In all these transactions Stockslager was acting strictly within the line of the duties devolving upon him as president and cashier of the defendant bank, and hence the bank can not now, for the purpose of avoiding the legal consequences of his malfeasance or mistake, be heard to repudiate his authority. It appears from the evidence that Stockslager left the employ of the defendant bank on the 1st of July, 1894, and that the plaintiff had no further dealings with the bank after that time until this controversy arose. Plaintiff testified that he failed to get a full statement of his account from the defendant bank until he came back to Humphrey in September, 1898, and that he then procured a statement of his account from the new cashier of the bank, and that as soon as he got this statement he discovered the mistake, and demanded payment of the balance due him, and on this demand being refused he at once instituted this suit. The question then arises as to when the statute of limitations began to run in this case. The rule seems to be that, as between a depositor and a bank, the statute of limitation does not begin to run until a demand is made for the money on deposit. This rule seems to be grounded on a sound principle, because the contract between a bank and a customer who opens a check and deposit account with it is not that the bank will pay the whole amount of the deposit at any particular day, for this would constitute a time deposit, rather than a check and deposit account, but the contract is that it will pay the amount of the deposit whenever it is demanded. Consequently in the case at bar the defendant bank was not in default for non-payment of the amount due plaintiff until such amount was demanded, and this demand was not

made until a few days before this suit was commenced.
And if the testimony of plaintiff at the trial below is to be
believed, he was not negligent in making this demand, be-
cause he had no means of knowing how much, if anything,
was owing to him from the bank until he procured a full
statement of his account from its managing officers in
September, 1898.  *Goodell v. Brandon Nat. Bank*, 63 Vt.,
303, 21 Atl. Rep., 956; Wood, Limitation [3d ed.], sec. 17;
*Thomson v. Bank of British North America*, 82 N. Y., 1;
*Brahm v. Adkins*, 77 Ill., 263, 265.

Some objection is made in the brief of defendant bank
to the action of the trial court in excluding some corre-
spondence offered by defendant between the plaintiff and
Stockslager, but all the correspondence excluded was
about matters which threw no light on the question in con-
troversy, and hence the action of the trial court was fully
justified.  Only one of the instructions given by the learned
trial court is assailed in the brief of defendant bank.  This
was the fifteenth instruction given by the court, which told
the jury, in substance, that if they found for plaintiff they
should fix the amount of his recovery at $578.20, and in-
terest at seven per cent. from the time of demand.  As the
evidence clearly showed that plaintiff was either entitled
to that amount or nothing, we can not imagine what error
is concealed in the instruction.

It is also urged that the court erred in permitting two
of plaintiff's counsel to question the same witness, over the
objection of defendant.  While we do not commend this
practice, as a rule, yet it is a matter that is purely within
the discretion of the trial court.

Finding no error in the record, we recommend that the
judgment of the lower court be affirmed.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing
opinion, the judgment of the district court is

AFFIRMED.