MARY J. SHARP ET AL. v. CITIZENS BANK OF STANTON, NEBRASKA, ET AL.

FILED JANUARY 21, 1904.   No. 13,319.

1. **Decedent's Estate: ACTION BY HEIRS.** The heirs of an insolvent estate can not prosecute an action in their individual capacity to recover newly discovered assets of the estate until the debts and costs of administration have been paid.

2. **Allowance of Claim: DORMANT JUDGMENT.** The allowance of a claim against an insolvent estate is not a judgment which becomes dormant by lapse of time as against newly discovered assets of such estate.

3. **Insolvent Estate: ASSETS.** Newly discovered assets of an insolvent estate are a trust fund in the hands of an administrator for the payment of debts and costs of administration, and do not descend to the heirs and distributees until such claims are paid.

4. **Limitation of Actions.** The statute of limitations does not begin to run against a bank on a certificate of deposit payable on demand until a demand has been made.

5. **Subrogation.** "A person seeking the benefit of subrogation must have paid a debt due to a third party before he can be substituted to that party's right; and in doing this he must not act as a mere volunteer, but on compulsion to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt. The right of subrogation is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another." *Rice v. Winters*, 45 Neb. 517, followed and approved.

6. ————: EVIDENCE. Evidence examined, and *held* insufficient to show a right of subrogation of the sureties on notes of an intestate to a lien on money of the estate deposited in a bank to which the notes were payable.

ERROR to the district court for Stanton county: GUY T. GRAVES, JUDGE. *Reversed.*

*A. R. Olson,* for plaintiffs in error.

*W. A. Meserve, W. P. Cowan, W. W. Young, G. A. Eberly* and *John A. Erhardt, contra.*

OLDHAM, C.

In the years 1886, 1887, 1888, and 1889 William T. Sharp was the duly elected, qualified and acting treasurer of Stanton county, Nebraska; in the year 1890 he was the duly elected, qualified and acting clerk of the same county; on July 6, 1891, he was drowned in a stream of water, and left an insolvent estate; on August 17, 1891, an administrator was appointed over his estate and on September 12, 1892, the administrator made his final report and was discharged; at the time of the discharge a large number of claims had been filed against the estate, including the claims of all the cross-petitioners in this action; these claims aggregated about $4,000, no part of which were paid on account of the insolvency of the estate. In the year 1900 it was discovered by the heirs of the deceased that he had to his credit in the Citizens Bank of Stanton the sum of $938.10, which fact was unknown to the administrator of the estate, and consequently had never been collected and applied to the debts allowed against the estate. There is some dispute in the record as to whether the credit in the bank was a special deposit evidenced by a certificate payable on demand or a general check and deposit account. In view of the conclusion we shall presently reach, it is immaterial in which form this credit existed; the deposit, however, in whichever form made, was in the name of William T. Sharp, individually, and not as treasurer of the county. The deposit was made February 4, 1888, and while the deceased was acting as county treasurer. It clearly and indisputably appears that the deposit was made by a draft received from A. E. and S. A. Kent, in

payment of taxes due on a large body of real estate in said
county, and that the draft was payable to the order of
the county treasurer. Soon after the discovery of this
credit, plaintiffs, who are the heirs at law of William T.
Sharp, deceased, instituted this action against the Citizens
Bank to recover the amount of the deposit. The bank filed
an answer to plaintiffs' petition equivocally denying the
deposit; pleading the statute of limitations, and alleging
that there were many creditors of the estate who had an in-
terest in the fund, if it should be found that there was a
deposit in the bank, and asking that the other creditors be
made parties defendant. Without determining the right of
the defendant bank to the order to have the other parties
made defendants, in view of its denial of liability it will
suffice for the conclusion reached to say that other parties
did appear and file intervening petitions- claiming the
deposit. These different cross-petitioners may be classi-
fied from the nature of their claims into: (1) The sureties
on the official bond of William T. Sharp, as county treas-
urer, who alleged that they had been compelled to pay as
sureties some $700 to the county of Stanton in settlement
of the defalcation of their principal as treasurer of said
county, and that, for this reason, they were subrogated
to the rights of the county in the money on deposit in the
bank; (2) a class of interveners, whom we will designate
as special creditors, who alleged that they had paid certain
sums of money to the Citizens Bank on notes which were
owed by the deceased to the said bank on which they were
sureties, and that these sums were paid while the money
of deceased was on deposit in said bank, and that they were
therefore subrogated to the lien of the bank on money on
deposit when the several notes became due; (3) the gen-
eral creditors of the estate, who alleged the filing and al-
lowance of their various claims, and that the money was
an unadministered asset of the estate and should be
divided *pro rata* among all creditors whose claims had
been properly allowed. On a trial of these issues to the
court, a judgment was rendered in favor of cross-peti-

tioners Lamb and Schauble, who were sureties on the
official bond of the deceased as county treasurer of Stanton
county, awarding them equal shares of the amount on de-
posit in defendant bank, and dismissing the petition of
plaintiffs and the cross-petitions of both the special and
general creditors of the estate, and, for the purpose of re-
viewing this judgment, the plaintiffs, the defendant bank
and both classes of cross-petitioners have separately
brought error to this court.

Each of the contending claimants have filed carefully
prepared briefs and offered oral arguments in support of
their various contentions, and have urged that, if this case
be reversed, we make such findings as to their various
rights as will enable the lower court to finally dispose of
the matter at another hearing. Agreeably to this sugges-
tion, we will examine, first, the claim of plaintiffs who are
heirs of the deceased to the right to maintain this action
in their individual capacity. This right is predicated upon
two facts: (1) That administration on the estate had
been ended; (2) that all the claims allowed in the
probate court against the estate had become dormant by
lapse of time before the discovery of the additional asset
of the estate. After an examination of the brief filed in
support of these contentions, we find ourselves unable to
concede either claim. The right of the heirs at law to
maintain a personal action in their individual capacity
against debtors of a deceased ancestor depends upon two
propositions: (1) That the estate has been fully admin-
istered; (2) that all the debts of the estate have been paid.
For, as was said by NORVAL, J., in *Cox v. Yeazel,* 49 Neb.
343:

"It is only the residue of the personalty remaining after
such debts and expenses are paid that descended to the
heirs or distributees."

Now as the admitted facts in this case show that there
are about $4,000 of unpaid claims allowed against the
estate, and the newly discovered asset amounts to less than
$1,000, it is plain that there is nothing in the estate, even

after the allowance of this claim, that can descend to the heirs or distributees. With reference to the second contention, that the claims allowed in the probate court are now dormant judgments, we can not agree. Claims properly allowed in the probate court are in the nature of audited and adjudged demands, which are a lien on the assets of the estate in the hands of the administrator or executor. There is no provision of our statute permitting an execution, in the first instance, for the collection of a claim allowed against the estate of a deceased person. It is only where the court has allowed claims against the estate, and made a finding that there are assets in the hands of the administrator for the purpose of paying such claims, and has made an order directing the administrator to distribute the assets, that the order of distribution creates a personal liability against the administrator and has the effect of a judgment. *Lydick v. Chaney,* 64 Neb. 288. Consequently, the mere allowance of a claim against an insolvent estate does not operate as a judgment, which will become dormant in five years as contemplated by section 482 of the code. In *Dexter v. Arnold,* 3 Mason (U. S.), 284, it is said:

"Where an estate is insolvent, and distribution of assets is decreed  *  *  *  and afterwards new assets come into the hands of the administrator, more than sufficient to pay all the debts, a suit will lie against the administrator for payment, in behalf of creditors, notwithstanding the statute of limitations precludes an original suit against the administrator; for the new assets are a trust fund for the creditors, and the heirs can claim distribution only after all the debts are paid."

If, as here held, the newly discovered assets of the estate are a trust fund in the hands of the administrator for the payment of all claims against the estate, it follows that the cross-petitioners, who are general creditors, have no right of action in their individual capacity to recover these assets. In this view, the petition of plaintiffs and the cross-petitions of the general creditors were properly dismissed.

Passing then to the contention of the defendant bank that the court erred in finding that the indebtedness to the deceased was in the form of a check and deposit account, instead of a special deposit evidenced by a demand certificate, as shown by the books of the bank, we would say that we do not think it material to determine whether or not the clear weight of the evidence showed the indebtedness to have been in one form or the other. It is plain and indisputable, and now conceded by the bank, that they have in their possession the amount of money which was left there on deposit by the deceased, and, so far as the defense of the statute of limitations is concerned, we think it makes no difference in which form the indebtedness existed. In neither instance would the statute begin to run until demand was made for the payment of the money by the depositor or his assignee. As between a bank and its customers, either on a check and deposit account or as holders of demand certificates, there is no promise to pay until demand is made, and consequently a demand is necessary to put the statute in operation. *Citizens Bank of Humphrey v. Fromholz*, 64 Neb. 284.

With reference to the sufficiency of the testimony to support the judgment in favor of the cross-petitioners, Lamb and Schauble, a much more serious question arises. This judgment is bottomed on the theory that these cross-petitioners paid the amount, or a portion thereof, as surety of their principal on his indebtedness as treasurer to Stanton county, and that, having done so, they should be subrogated to the rights of the county against the money on deposit in the defendant bank. As already stated, it was clearly proved that the money deposited in defendant bank by the deceased was the proceeds of a draft which he had received as treasurer for the payment of taxes, but that this money was deposited to his individual credit, and that the transaction took place before the depository law was enacted. The proof shows that the deceased served two terms as county treasurer, and that the cross-petitioners were sureties on his official bond only during his second term of

office. It appears that the money alleged to have been advanced by cross-petitioner Schauble was loaned by him on May 1, 1890, and that this loan was evidenced by a note for $350, which the deceased gave to the cross-petitioner, and that this note was afterwards probated and allowed as a claim against the estate. It further appears from the testimony that an investigation was begun of the accounts of the deceased by the county board of Stanton county in July, 1890, two months after the money had been loaned to the deceased by Schauble. It further appears that the investigation extended over the books and accounts of the deceased during both his terms of office as treasurer; that the result of the investigation showed a shortage of between $2,000 and $3,000 for both terms, and that on March 31, 1891, this shortage for both terms was compromised by the deceased by the payment of $1,200. There is no evidence in the record that traces one dollar of the money borrowed from Schauble to the settlement of the account of the deceased with Stanton county. No suit seems to have been brought on either of the official bonds of deceased. The evidence wholly fails to show that the money was paid under compulsion to protect against the superior right of the principal of the bond. In *Rice v. Winters*, 45 Neb. 517, it is said:

"A person seeking the benefit of subrogation must have paid a debt due to a third party before he can be substituted to that party's right; and in doing this he must not act as a mere volunteer, but on compulsion to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt. The right of subrogation is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another."

The same doctrine was approved by this court in *Aultman, Miller & Co. v. Bishop*, 53 Neb. 545. The testimony in support of the claim of cross-petitioner Lamb is practically the same, the difference being that, instead of loaning the deceased money, he signed a note for the deceased as surety for the sum of $350; this note appears to have

been renewed from time to time and was finally paid by the cross-petitioner. There is no testimony that one cent of the proceeds of this note went to the payment of the obligation of the account of the deceased. We therefore conclude that the evidence is wholly insufficient to show a right of subrogation in cross-petitioners, Lamb and Schauble, to the money on deposit in defendant bank, even if Stanton county had a lien on this money at the time of its settlement with the deceased.

Proceeding then to an examination of the claim of the cross-petitioners whom we have designated in this opinion as "special creditors," we find their claim to subrogation based on the theory that they had signed certain notes as sureties for the deceased, which were owned by the defendant bank, and none of which fell due until after the death of the intestate, and which they, as sureties, paid to the bank. These claims were subsequently filed and allowed against the estate of the intestate. The contention urged is that the bank had a lien on the money of the intestate on deposit against the notes owed by him to the bank, and that, by the payment of these notes as sureties, they were subrogated to the lien of the bank against the money on deposit. The doctrine of what is commonly called a banker's lien on deposits made by one indebted to the bank stands on the principle of the right of set-off of mutual accounts; the deposit is an indebtedness of the bank to the depositor, and a note signed by the depositor and owned by the bank is an indebtedness to the bank which, when matured, may be set off against the bank's indebtedness. Consequently the right of set-off depends on the maturity of the debt owned by the bank. If then we treat the money on deposit in the bank as an indebtedness to the deceased in his individual, rather than his representative, capacity, and such indebtedness had matured before any other rights intervened, the bank might have applied the deposit as a credit on the note; but where the indebtedness to the bank has not matured until after the death of the depositor the right of set-off does not exist. Boone, Banking, secs. 65,

281; *Jordan v. Bank,* 74 N. Y. 467, 30 Am. Rep. 319; *Commercial Nat. Bank v. Proctor,* 98 Ill. 558.

The general lien of a bank for a balance of account is not favored by the courts, and does not exist if there are any circumstances, in any case, inconsistent therewith. Boone, Banking, sec. 278; *Appeal of Liggett Spring & Axle Co.,* 111 Pa. St. 291. On this principle, even had the debt matured in the lifetime of the intestate, the knowledge of the bank of the trust relation in which the deposit was made would, as against the claim of Stanton county, have prevented a set-off of this deposit against the indebtedness of the intestate to the bank; hence we are of the opinion that the evidence offered by cross-petitioners is insufficient to establish a lien by subrogation to the rights of the bank.

It is therefore recommended that the judgment of the district court be reversed and the cause remanded.

AMES and HASTINGS, CC., concur.

By the Court: For the reasons stated in the above opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.