EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, APPELLEE, V. CARRIE P. PERSON ET AL., APPELLANTS.

284 N. W. 260

FILED FEBRUARY 17, 1939. No. 30490.

*James E. Brittain* and *H. E. Siman,* for appellants.

*Winfield R. Ross, Brown, Fitch & West* and *Fred S. Berry,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Plaintiff brought this action to foreclose a 7,500-dollar mortgage executed by Carrie P. Person, owner, and Per Person, her husband, on 160 acres of land in Wayne county, Nebraska. The judgment of the trial court awarded to plaintiff a first lien upon the real estate for the sum of $7,500, and ordered the land sold for the satisfaction of said lien, the defendants having failed to redeem within a

period of 20 days. From this decree and judgment of the court defendants appeal.

Plaintiff's second amended petition contained the usual allegations of a cause of action for foreclosure of a real estate mortgage, and alleged, in substance, that prior to the execution and delivery of the mortgage by defendants the land had been encumbered by two mortgages totaling $7,500, both of which were valid liens and made while defendant Carrie P. Person was mentally competent. Carrie P. Person bought 160 acres of land from Oliver Chapman, her uncle, on January 24, 1910, and received a warranty deed therefor. At the time, there was a mortgage on the land in the amount of $3,000, dated March 22, 1905, that had been executed by Chapman and wife, running to M. D. Cameron, due April 1, 1910. As part of the purchase price Carrie P. Person and her husband executed and delivered a note and mortgage to Chapman January 25, 1910, due April 1, 1915, in the amount of $4,500, subject to the 3,000-dollar mortgage, which was extended to April 1, 1915. March 19, 1915, the two mortgages remained unpaid, and, in order to refund the indebtedness, defendants made, executed and delivered to the Prudential Insurance Company of America a note and mortgage in the sum of $4,500, due April 1, 1920, and at the same time gave to Oliver Chapman a note and mortgage in the amount of $7,017.25, also due April 1, 1920. The proceeds from the loan obtained from the Prudential Insurance Company were paid to M. D. Cameron, and the balance over and above the amount of his mortgage was applied to reduce the Chapman mortgage. The Cameron mortgage was released of record April 20, 1915. On April 1, 1920, the entire indebtedness secured by the mortgage deeds, as aforesaid, was unpaid. The defendants then borrowed from Walter L. Hurlbert the sum of $4,500, giving a note and mortgage therefor, due April 1, 1925, and, to evidence the refunding of the indebtedness remaining due to Oliver Chapman, gave him a note and mortgage in the sum of $7,000, dated April 1, 1920. The money obtained from Hurlbert was paid to the Prudential

Insurance Company in settlement of its loan, and its mortgage was released April 15, 1920. On January 22, 1925, the entire indebtedness secured by the mortgage deeds, that is, of Hurlbert and Chapman, was unpaid, and, in order to refund part of said indebtedness, the defendants applied to the Forgan Investment Company for a loan in the amount of $13,000. The sum of $7,500 was loaned by the Forgan Investment Company to the defendants, and on February 20, 1925, defendants made, executed and delivered to the investment company a note and mortgage, due April 1, 1930. The Forgan Investment Company paid Hurlbert $5,212.45 in full for his lien, and applied to the Chapman indebtedness the sum of $2,310. The Hurlbert mortgage was released March 6, 1925, and the Chapman mortgage on March 30, 1925. February 20, 1925, the defendants, in order to induce the plaintiff in this action to purchase said mortgage and accept assignment thereof, made, executed and delivered to plaintiff a certain mortgagor's estoppel certificate. March 25, 1925, the Forgan Investment Company, for full value, assigned its note and mortgage to the plaintiff. On December 5, 1929, defendants, desiring an extension of the mortgage to April 1, 1935, made, executed and delivered to the plaintiff an extension agreement. Defendants failed and neglected to pay the interest coupons April 1, 1933, and April 1, 1934; hence this action to foreclose the mortgage in suit.

Plaintiff further alleged that the Forgan Investment Company made the loan to defendant Carrie P. Person upon the express agreement and covenants of defendants that plaintiff's mortgage would be a first lien on the real estate, and that the proceeds from the loan to defendants were paid out by said company as per their direction; and further alleged that, in the alternative, if the lien of plaintiff's mortgage deed on the real estate is not a valid first lien, the plaintiff is entitled to have the lien of the two mortgages to M. D. Cameron and Oliver Chapman revived and the respective releases thereof canceled and set aside, and that plaintiff is entitled to be subrogated to the rights

of Cameron and Chapman under their separate mortgages, and to be treated as the equitable assignee thereof, and to have the same reestablished on said real estate for the amount paid by the Forgan Investment Company to satisfy and discharge the Hurlbert and Chapman mortgages.

The answers of Per Person and Per Person as guardian of Carrie P. Person alleged that Carrie P. Person was insane and incompetent at the time of the execution of the mortgage in suit and at the time of the execution of the extension agreement and estoppel certificate, and was incapable of understanding the nature thereof; that she had been adjudged to be insane by the proper authorities of Wayne county in December, 1920, was confined in the State Hospital for the Insane at Norfolk, and had been insane for several years prior thereto; alleged an adjudication of the mortgage of Oliver Chapman by the district court for Wayne county in a previous action. The answer of Per Person admitted the corporate capacity of plaintiff; that he was appointed guardian August 15, 1933; that Carrie P. Person owned the fee simple title to the real estate involved, and the proceedings relating to the assumption of the 3,000-dollar mortgage of Cameron, the purchase of the real estate from Chapman and the giving of the 4,500-dollar mortgage to Chapman; and denied the other allegations of the plaintiff's second amended petition.

Plaintiff's reply contained an allegation of the ownership of the premises in Carrie P. Person and that the funds received from the 7,500-dollar mortgage were disbursed under her direction; that she is barred and estopped from alleging insanity and asserting that plaintiff's mortgage indebtedness is not a valid lien upon the real estate; denied that the Forgan Investment Company had any knowledge or notice of the alleged incompetency; denied generally the allegations of the answer.

The court found that the several mortgages referred to in the petition were executed as alleged and that, in order to refund the indebtedness on the several occasions, as heretofore mentioned in the petition, the several mortgages

were given; found that the original indebtedness of $7,500 on the land at the time Carrie P. Person was sane had never been reduced but had continued by virtue of other loans from the time of the purchase of the real estate and the mortgage evidencing former indebtedness released; that the Forgan Investment Company had no knowledge of the insanity of Carrie P. Person; found the amount due on the mortgage to be $11,313.26 as of date of March 10, 1938; gave the plaintiff a first lien on the real estate in the amount of $7,500, and upon failure of defendants to pay the lien within 20 days from the date of decree the realty to be ordered sold; the proceeds received therefrom to be first applied to the payment of plaintiff's lien, and second for the use and benefit of the defendants; and granted a decree in foreclosure. The court found for the plaintiff on what it terms straightforward equitable principles that should be invoked in this case, and did not apply the doctrine of subrogation.

The appellants start with the premise that the prayer for alternative relief contained in plaintiff's second amended petition is that its mortgage be established as a first and valid lien against the real estate, and that, if the mortgage is not valid, then the release of the Cameron and Chapman mortgages be vacated and plaintiff be subrogated to such mortgage liens; that the plaintiff is therefore relying on subrogation in case the mortgage in suit is found void. Defendants state that they are in accord with plaintiff in this respect, and call attention to paragraph 15 of the court's decree, which in part reads: "In case a debt as a matter of equity is entitled to be subrogated to the lien of a mortgage upon real estate, it is within the power of a court of equity, as a condition precedent to granting equitable relief to the owner of the real estate, to compel the payment of that mortgage, even though by its terms said lien be barred by the statute of limitations;" and state that if recovery is had it must be through subrogation.

The loan secured by plaintiff's mortgage was made in good faith; neither plaintiff nor its assignor had any knowl-

edge of the alleged incompetency of Carrie P. Person. There was no fraud or over-reaching, and the proceeds of the loan were disbursed in payment of her mortgage indebtedness as directed. As to insanity, appellants claim that the incompetency of Carrie P. Person was the only fact to be determined, and it was determined that she was insane.

With reference to the mental competency of Carrie P. Person, the court found that in 1920 and at the time of the original mortgage to the Forgan Investment Company in 1925, and at the time of the extension agreement in December, 1929, and at the present time, Carrie P. Person was suffering from *dementia præcox*; that in 1920 she had been incarcerated in the state hospital for four months, was paroled two or three years later and discharged; that it is not possible to know with certainty the extent to which this disease affected her judgment in the matter, or whether she knew the nature or extent of her transactions at any of those times; that she probably knew what she was doing when she signed the plaintiff's deed and extension agreement, but did not know or care about the amounts.

Appellants assign as error the rendering of the decree and decreeing any lien against the real estate in question, after having found Carrie P. Person incompetent, and that the findings of fact made by the trial court furnish neither reason nor basis for the decree, but show that the plaintiff is not, either in law or in equity, entitled to a decree.

Subrogation is a salutary, equitable remedy, conceived in justice, and the decisions in this state have given full recognition to the doctrine, as evidenced by the following authorities:

In *Aultman, Miller & Co. v. Bishop,* 53 Neb. 545, 74 N. W. 55, this court held: " 'The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. It does not rest on contract, and no general rule can be laid

down which will afford a test in all cases for its application. Whether the doctrine is applicable to any particular case depends upon the peculiar facts and circumstances of such case.' *South Omaha Nat. Bank v. Wright*, 45 Neb. 23, and *Rice v. Winters*, 45 Neb. 517, followed."

"Originally, the right of subrogation was limited to transactions between principals and sureties, but courts of equity have expanded the doctrine so that now it will be applied where one, not acting voluntarily, pays the debt for which another is primarily liable, and which, in equity and good conscience, the latter should have discharged. The doctrine will be applied in all cases where demanded by the dictates of equity, good conscience and public policy." *State v. Citizens State Bank*, 118 Neb. 337, 224 N. W. 868. See *Eaton v. Hasty*, 6 Neb. 419; *Frederick v. Gehling*, 92 Neb. 204, 137 N. W. 998; 25 R. C. L. 1313, sec. 2; 1314, sec. 4; 1322, sec. 10.

Law writers have generally classified subrogation into two classes: Legal subrogation, which is allowed in cases where one, who pays the debt of another, stands in the situation of a surety and is compelled to pay the debt to protect his own rights; and conventional subrogation which arises when one pays the debt of another under an agreement, existing at the time of the payment with the debtor or creditor, that the person paying it shall be subrogated to the rights of the creditor. *Luikart v. Buck*, 131 Neb. 866, 270 N. W. 495; 2 Story, Equity Jurisprudence (14th ed.) 110, sec. 706.

Appellants' contention is that plaintiff does not attempt to bring itself within the scope of legal or conventional subrogation; that plaintiff did not make this loan, or pay the Hurlbert mortgage and a part of the Chapman mortgage to protect itself; that it was not a surety for either; that it was a mere volunteer and was dealing at arm's length with Carrie P. Person; that no claim had been made and there is no evidence of an agreement with Carrie P. Person, Chapman or Hurlbert, that the mortgage liens of Hurlbert and Chapman should be kept alive and plain-

tiff subrogated thereto; that plaintiff is a volunteer and a stranger.

This court in *Bohn Sash & Door Co. v. Case,* 42 Neb. 281, 293, 60 N. W. 576, sets forth the definition of a volunteer or stranger as stated in *Emmert v. Thompson,* 49 Minn. 386, 52 N. W. 31: "The better opinion now is that one who loans his money upon real estate security for the express purpose of taking up and discharging liens or encumbrances on the same property has thus paid the debt at the instance, request, and solicitation of the debtor, expecting and believing, in good faith, that his security will, of record, be substituted, in fact, in place of that which he discharges, is neither a volunteer, stranger, nor intermeddler, nor is the debt, lien, or encumbrance regarded as extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money, who thereby becomes the creditor."

Appellants cite *Rice v. Winters,* 45 Neb. 517, 63 N. W. 830, wherein this court held: "A person seeking the benefit of subrogation must have paid a debt due to a third party before he can be substituted to that party's right; and in doing this he must not act as a mere volunteer, but on compulsion to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt. The right of subrogation is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another. *Aetna Life Ins. Co. v. Middleport,* 124 U. S. 534, followed." See, also, *Meeker v. Larsen,* 65 Neb. 158, 90 N. W. 958; *Mavity v. Stover,* 68 Neb. 602, 94 N. W. 834; *Boevink v. Christiaanse,* 69 Neb. 256, 95 N. W. 652; *Sharp v. Citizens Bank of Stanton,* 70 Neb. 758, 98 N. W. 50.

In the instant case, the original indebtedness, in the amount of $7,500, has never been paid, but by a succession of mortgages the indebtedness has been refunded. At the time of the creation of the original indebtedness, as far as Carrie P. Person is concerned, she was sane and capable of contracting. The Forgan Investment Company relied

upon a written application for a loan of $13,000, containing an agreement that the loan would be secured by a first mortgage on real estate, and relied on an abstract of title, furnished by appellants; it had no knowledge of the alleged insanity. The plaintiff, as the assignee of the Forgan Investment Company, relied upon a certificate of estoppel and upon an abstract of title, and subsequently upon an extension agreement, and, by virtue of its assignment, stood in the same relation as the Forgan Investment Company. By purchasing the mortgage from the investment company, it purchased the debt. The proceeds had been applied by the Forgan company as directed, not by it but by defendants. By the very nature of the transaction, there is at least an implied agreement that this plaintiff would have a first lien on the premises, and in view of the facts, where the original indebtedness has not been extinguished and has been in existence and still is and evidenced now by plaintiff's mortgage.

In *Hoagland & Co. v. Decker,* 118 Neb. 194, 224 N. W. 14, referring to subrogation, it was said in the opinion: "The word 'conventional' is defined as growing out of or established by convention; that is, an agreement or mutual engagement between persons. As the name implies, conventional subrogation is founded upon some understanding or agreement, express or implied, and without which there is no 'convention.' "

"Conventional subrogation arises by reason of either an express or an implied agreement between the third person paying the debt and either the debtor or creditor." *State v. Holdrege State Bank,* 110 Neb. 814, 195 N. W. 120.

The following authorities also show the extent to which our court has gone in granting subrogation:

"A court of equity will apply the doctrine of subrogation where to refrain from so doing would permit a person who has received the benefit of money paid under a mistake of fact, which discharged a lien upon real estate, to retain such benefit under such circumstances that equity and good conscience dictate its repayment or the preservation of the

lien." *Lee v. Newell,* 96 Neb. 209, 147 N. W. 684. See, also, *Criswell v. McKnight,* 120 Neb. 317, 232 N. W. 586.

In *Hoagland & Co. v. Decker, supra,* it was held: "No general rule can be laid down which will afford a test in all cases for conventional subrogation. Whether or not the doctrine of conventional subrogation is applicable in any particular case depends upon its particular facts and circumstances, the principle not being enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration."

Appellee cites the case of *Betts v. Sims,* 35 Neb. 840, 53 N. W. 1005, as being a precedent for granting subrogation in the instant case. The case cited was an action brought by Betts and wife against Sims to quiet title. Sims and his grantors had paid off prior mortgages, all believing they had a good title to the land. Sims asked for a revival of the mortgage liens and the right of subrogation to the rights of their holders and to have the liens enforced against Betts. The court held: "A purchaser of real estate who has paid off a prior mortgage thereon in the belief that he was the owner of the property purchased, will, on a failure of his title, be subrogated to the rights of the mortgagee as against the mortgagor and others who are in equity liable for the mortgage debt."

In the instant case, the Cameron 3,000-dollar mortgage and the Chapman mortgage were valid liens which were not paid by Carrie P. Person. The plaintiff and its predecessors paid these mortgages in the belief that they had obtained valid first mortgage liens. In *Betts v. Sims, supra,* the prior valid mortgage liens were revived for Sims' protection, and he was treated as the assignee of the same and subrogated to the rights of the mortgagees.

In the decree of the district court, in paragraph 15, the court found that a judgment in favor of Mrs. Person would, in effect, be a decree quieting her title, and that the statute of limitations does not run as against subrogation; that the guardian's answer for the incompetent ward, in fact, asked that her title to the real estate be quieted against plaintiff.

In the instant case, there is no bill of exceptions, and, in the absence thereof, it is presumed that all issues of fact raised by the pleadings received support from the evidence, and that such issues were correctly determined.

"In the absence of a bill of exceptions, a judgment supported by the pleadings will not be set aside because of special findings, if the latter can by any fair interpretation be held to support it." *Swobe v. Drummond Motor Co.*, 109 Neb. 631, 192 N. W. 320. See *Kupke v. Polk*, 73 Neb. 590, 103 N. W. 321.

The special findings in the instant case, by fair interpretation, are held to support the judgment of the trial court. To hold for the defendants would deprive the plaintiff of the full amount of $7,500 and permit Carrie P. Person to retain 160 acres of land, without indebtedness thereon.

In equity and good conscience, we believe that a decree should be entered, providing that the release of the mortgage to M. D. Cameron, dated March 22, 1905, and the release of the mortgage to Oliver Chapman, dated January 25, 1910, on said real estate be vacated and set aside, and that the liens of said respective mortgages be revived and reestablished as valid liens on said real estate for the plaintiff's benefit, and that the plaintiff be decreed to be subrogated to the mortgage liens of said M. D. Cameron and Oliver Chapman, and the mortgage liens foreclosed, and said real estate sold in satisfaction thereof, in the amount of said mortgage liens, namely, $7,500.

AFFIRMED.