SHARON RAWSON, APPELLANT, V. CITY OF OMAHA, NEBRASKA, APPELLEE.

322 N.W.2d 381

Filed July 16, 1982. No. 44274.

Daniel P. Chesire of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Herbert M. Fitle, City Attorney, and Richard A. Cerveny, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

This is an appeal from a judgment entered by the District Court for Douglas County, Nebraska, which, in essence, found that while the appellant, Sharon Rawson, had paid to third parties money for damages caused solely by the negligence of the appellee, City of Omaha (City), she could not recover that money from the City under the theory of contribu-

tion. She has now appealed that judgment and, upon consideration of the case, we find that the judgment of the trial court should be reversed and remanded with directions.

The record discloses that Rawson was operating her motor vehicle west on Blondo Street in Omaha, Nebraska, on February 24, 1978. As she approached the 7300 block, her right front tire suddenly struck a large pothole in the street, causing her to lose control of her vehicle. Her vehicle then crossed the centerline and struck the left rear of a pickup owned and operated by Rollie Rogers. Rawson's vehicle then continued westbound and the left front of her vehicle struck the left front of a vehicle owned and operated by Fred Black. Black was accompanied by his daughter, Jean Clary, and her two sons, Brian and Michael. The collision with Black's vehicle spun Rawson's vehicle around and it came to rest in the westbound lane of traffic pointing in an eastward direction approximately 270 feet from the location of the pothole.

As a result of the accident Rogers made a claim for property damage against Rawson in the amount of $492.41. Black also made a claim for property damage to his vehicle and for his personal injury against Rawson. Black subsequently filed a lawsuit against Rawson which was settled without trial for the sum of $11,215.50. A second suit filed by Black's daughter and her children against Rawson was likewise settled for the sum of $1,665. Rawson was required to pay to the various claimants the total sum of $13,372.91 in settlement of all the claims that were made against her as a result of the accidents. In addition, the Rawson vehicle was a total loss.

Rawson then filed a written claim with the City pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1977). The City never responded to the claim and it was

necessary for Rawson to withdraw her claim and file this lawsuit.

Her petition alleged three causes of action against the City. In her first cause of action Rawson sought damages for the loss of her vehicle. In her second cause of action she prayed for contribution from the City for the reason that she was compelled to pay the various claimants for their property damage and personal injuries arising out of the accident. Rawson alleged that the City was liable for contribution on the ground that the City was jointly liable to the claimants to whom she alone had paid a fair and reasonable settlement. Rawson further alleged that her payment to the claimants had conferred a benefit upon the City.

In her third cause of action Rawson prayed that the City indemnify her in the total amount of $13,372.50, being the amount that she was required to pay the various claimants.

The City demurred to Rawson's second cause of action, seeking contribution, and also demurred to her third cause of action, seeking indemnity, on the ground that neither stated a cause of action. The trial court overruled the demurrer as to the second cause of action and sustained the demurrer as to the third cause of action. The third cause of action was then dismissed. Trial was thereafter had on the first and second causes of action.

At trial, the City's counsel agreed that the sums paid by Rawson in settlement of the claims were fair and reasonable. The City also agreed that Rawson's claim was properly made pursuant to the Political Subdivisions Tort Claims Act and that the City did not act on the claim, thereby resulting in Rawson withdrawing the claim after 6 months and timely filing her lawsuit. The only issue the City contested was its liability to Rawson's claim for damages under both her first and second causes of action.

In the City's answer to Rawson's second cause of

action, it denied the existence of any negligence on its part and alleged that the sole proximate cause of the accident and the injury sustained to the various third persons with whom Rawson settled was a result of Rawson's negligence. The City then set out a number of specific allegations of negligence similar to those raised in defense of Rawson's first cause of action. The City also alleged that the defect in the road was a condition and not a cause of the accident, and that Rawson had the last clear chance to avoid the accident. The City finally alleged that if there was no negligence on behalf of Rawson, then she was a mere volunteer in settling with the claimants and therefore should not be entitled to any contribution. Following the trial, the trial court held that the sole proximate cause of the accident was the negligence of the City. The trial court's finding that the sole proximate cause of the accident was the negligence of the City will not be disturbed on appeal unless clearly wrong. See *Lee v. City of Omaha,* 209 Neb. 345, 307 N.W.2d 800 (1981). We cannot say it was clearly wrong. As a result of its finding, the trial court ordered the City to pay Rawson the loss related to her motor vehicle. That is not involved in this appeal and is final and binding on the City. The trial court then held that because Rawson was not at all negligent, and the negligence was solely that of the City, Rawson could not recover from the City under the theory of contribution.

While we believe the trial court was correct in its conclusion that, generally, in order for a party to recover contribution after a settlement of a claim by one of the parties, there must be a common liability proved to exist between both the party settling the claim and the party from whom contribution is being sought (18 Am. Jur. 2d *Contribution* § 47 (1965); *Allied Mutual Casualty Co. v. Long,* 252 Iowa 829, 107 N.W.2d 682 (1961); *Western Casualty & S. Co. v. Milwaukee G. C. Co.,* 213 Wis. 302, 251 N.W.

491 (1933)), we believe that Rawson was nevertheless entitled to recover back the money she had paid in settlement of the claims under the doctrine of equitable subrogation.

In the case of *Cagle, Inc. v. Sammons,* 198 Neb. 595, 602, 254 N.W.2d 398, 403 (1977), we recognized the doctrine of equitable subrogation, writing: " 'The doctrine of subrogation includes every instance in which one person pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made under compulsion or for the protection of some interest of the one making the payment and in discharge of an existing liability.' Sheridan v. Dudden Implement, Inc., 174 Neb. 578, 119 N.W.2d 64 (1962). The doctrine applies where a party is compelled to pay the debt of a third person to protect his own rights or interest, or to save his own property. Luikart v. Buck, 131 Neb. 866, 270 N.W. 495 (1936); 73 Am. Jur. 2d, Subrogation, § 11, p. 605. The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. It does not rest on contract and no general rule can be laid down which will afford a test for its application in all cases. The facts and circumstances of each case determine whether the doctrine is applicable. Rapp v. Rapp, 173 Neb. 136, 112 N.W.2d 777 (1962); Jones v. Rhodes, 162 Neb. 169, 75 N.W.2d 616 (1956); Equitable Life Assurance Society of the United States v. Person, 135 Neb. 800, 284 N.W. 260 (1939)."

And in 73 Am. Jur. 2d *Subrogation* § 4 at 600-01 (1974), it is observed: "Subrogation, in so far as it grows out of the equities of the parties, has much in common with certain other equitable doctrines. . . .

"Equity seeks by subrogation, as it does by reimbursement, contribution, and exoneration, to pre-

vent the unearned enrichment of one party at the expense of another by creating a relation somewhat analogous to a constructive trust in favor of the subrogee, or party making payment, in all legal rights held by the creditor. . . .

"Subrogation effects an assignment by operation of law and so it is sometimes termed 'equitable assignment.' But it has been regarded as differing from an ordinary assignment of the debt in that such assignment assumes the continued existence of the debt, while subrogation follows upon its payment. However, it has been asserted that regardless of whether a transfer is technically called assignment or subrogation or equitable assignment or assignment by operation of law, its ultimate effect is the same: to pass the title to a cause of action from one person to another."

While it is true that subrogation is never awarded in equity to one who is merely a volunteer in paying the debt of another (*Sharp v. Citizens Bank of Stanton,* 70 Neb. 758, 98 N.W. 50 (1904); 73 Am. Jur. 2d *Subrogation* § 23 (1974)), one who pays the debt of another in order to protect his own property or interest is not considered a volunteer for purposes of equitable subrogation. At 73 Am. Jur. 2d *Subrogation* § 24 at 613 (1974), we find: "Generally speaking, the party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation. . . .

"One is not a volunteer when he has an interest of his own to protect. And a payment is not voluntary when made under compulsion, as where one is forced to pay the debt or claim for which another is primarily liable."

A similar view has been adopted by courts with regard to restitution. The Restatement of Restitution § 71 at 290 (1937) notes: "A person who has paid

the debt of another in response to the threat of civil proceedings by a third person, whether or not the third person is acting in good faith, is entitled to restitution from the other if the payor acted to avoid trouble and expense.'' We perceive of no reason why a similar rule should not be adopted in connection with the doctrine of equitable subrogation. See 73 Am. Jur. 2d *Subrogation* § 25 (1974).

A case similar to the case at bar is *Alamida v. Wilson,* 53 Hawaii 398, 495 P.2d 585 (1972), decided by the Supreme Court of Hawaii. In permitting the plaintiff, who was found not to be a joint tort-feasor, the right to recover, the court said at 403, 495 P.2d at 589: ''Although we think that there can be no recovery on the theory of *contribution,* we do think that Morse and Keawe are entitled to recover from the co-defendants found liable, in this case the County, on the equitable principle of *subrogation* . . . .'' (Emphasis in original.) The court then cited with approval the statement from the Restatement, *supra,* and further cited the statement contained in the Restatement of Restitution § 162 (1937) to the effect: '' 'Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lienholder.' '' *Alamida v. Wilson, supra* at 404, 495 P.2d at 590.

We believe it would produce a totally illogical rule if we were to say that one who is slightly negligent may recover under the doctrine of contribution or indemnification, depending upon the facts, but one who is not at all negligent, but who is sued and therefore makes payment, may not recover at all.

Obviously, in the instant case, Rawson was not a volunteer as that term in the law is understood. Rawson was a party defendant to two lawsuits which,

until the cases were decided, might have determined that she was liable for an amount substantially in excess of that which was in fact paid. One should have the right to settle a lawsuit in which there is a reasonable doubt concerning liability and not be required to incur all of the expenses of litigation to conclusion before being entitled to seek subrogation. To hold otherwise would be to discourage settlements and to promote litigation, a concept which should be discouraged by the courts. We believe it is not inappropriate to hold that one who is sued for alleged negligence and who, in an effort to save his property, including the expenditure of attorney fees, enters into a reasonable settlement is not a volunteer and is entitled to seek reimbursement under the doctrine of equitable subrogation. Were we to hold otherwise we would declare that the appellant herein, though found to be totally free of any negligence, must bear the total expenses which should have otherwise been paid by the City. It occurs to us that to hold otherwise would result in unjust enrichment to the City and was the very reason for creating the doctrine of equitable subrogation. The party ultimately determined to be liable is not in any manner prejudiced by our holding. All of the defenses which were available to the defendant, had it been sued in the first instance, are still available when sued by one seeking subrogation. We believe that the judgment of the trial court on the second cause of action should be reversed and the cause remanded with instructions to enter judgment for Rawson and against the City of Omaha on her second cause of action.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissenting.

I dissent. The opinion extends the subrogation doctrine beyond its purposes. An unresolved tort liability is not a debt. The existence of a debt is basic to the right of subrogation. The right of con-

tribution can ordinarily be enforced and legally determined by third-party procedure. Neb. Rev. Stat. § 25-331 (Reissue 1979); *Royal Ind. Co. v. Aetna Cas. & Sur. Co.,* 193 Neb. 752, 229 N.W.2d 183 (1975). Although joinder may not be possible in all cases, I would not extend subrogation simply to meet the requirements of those special instances.