MERAMEC SPRING PARK COMPANY, Appellant,
v. THOMAS R. GIBSON.

Division Two, July 5, 1916.

1. **CORPORATION: De Facto: Organization Never Perfected: Collateral Attack.** Notwithstanding the articles of association of a corporation, recorded in its domiciliary county, were not filed with the Secretary of State and the company for that reason never become a *de jure* corporation, and notwithstanding the fact that the articles do not set forth the term of the corporation's existence and its life for that reason was limited to twenty years, if it held itself out to the world as a corporation and proceeded to act and hold property as a corporation, its existence as such cannot be attacked in a collateral proceeding, such as a suit to determine the interest of the grantee in a tax deed made in pursuance to a suit for taxes brought against the corporation two years after the twenty years' period had expired. ·

2. ———: **Death by Statutory Limitation: Suit.** A corporation whose existence has culminated by the expiration of its charter life cannot be sued, for the statutory limitation *ipso facto* works its corporate death, and all its property goes to its directors as trustees for the stockholders; and that is just as true of a *de facto* as of a *de jure* corporation.

3. ———: ———: **Suit For Taxes: Collateral Attack.** A corporation cannot be sued for taxes after its corporate death has been wrought by the efflux of time, or the expiration of the time for which according to its articles and the statute it had corporate life; and if after the corporation's death a suit is brought for taxes against land which the county records show belongs to it and in pursuance to a judgment rendered therein the land is sold, the deed is void, and the claimant of the land under a deed made by its directors after its charter existence had terminated, can, in a suit with the grantee in the tax deed to determine the title, show all those facts to defeat the grantee's title.

Appeal from Crawford Circuit Court.—*Hon. R. A. Breuer*, Judge.

REVERSED AND REMANDED (*with directions*).·

*A. H. Harrison* for appellant.

(1) By the general law in force at the time the Meramec Iron Company was incorporated it was provided that "every corporation, as such has power: First, to have succession by its corporate name, for the period limited in its charter, and when no period is limited, for twenty years." G. S. 1865, p. 362, sec. 1. And that "upon the dissolution of any corporation —the president and directors, or managers of the affairs of said corporation, at the time of its dissolution—shall be trustees of such corporation, with full power to settle the affairs," etc. G. S. 1865, p. 329, sec. 19. This being the law, which has been carried forward in every revision since that time down to the present, the Meramec Iron Company had been dissolved by operation of law at the date of the institution of the suit against it for back taxes in 1894, and no suit could be maintained against it. The title to the land it formerly owned was in the surviving directors. Bradley v. Reppell, 133 Mo. 545; Richards v. Coal & Mining Co., 221 Mo. 149; State ex rel. v. Road Co., 207 Mo. 54; State ex rel. v. Road Co., 138 Mo. 332; Landis v. Saxton, 105 Mo. 486; G. S. 1865, p. 326, sec. 1 (now Sec. 2990, R. S. 1909); G. S. 1865, p. 329, sec. 19 (now Sec. 2995, R. S. 1909); Aldridge v. Pardee, 60 S. W. 789. After a corporation becomes dissolved, it can neither sue, nor be sued, unless the faculty of suing or being sued is prolonged by statute for the purpose of winding up its affairs. 6 Thomp. Corp., sec. 7360; Stiles v. Oil & Coal Co., 36 S. E. 986; Thornton v. Railroad, 123 Mass. 32. No judgment can be rendered against a corporation after its dissolution. Thomp. Corp. (2 Ed.), sec. 6564; Kinney v. Ice Cream Co., 57 N. Y. App. Div. 206; Pendleton v. Russell, 144 U. S. 640; 10 Cyc. 1323, sec. 8-A; Thornton v. Railroad, 123 Mass. 32; 10 Cyc. 1271; Scanlan v. Crenshaw, 5 Mo. App. 337;

Fairchild v. Masonic Hall Assn., 71 Mo. 526; Crossman v. Water Co., 150 Cal. 575; 5 Thompson on Corp., secs. 6721, 6722, 6723; Clark & Marshall on Private Corporations, secs. 322, 329; Angell & Ames on Corporations, sec. 195; 2 Morawitz on Corporations, sec. 1031; 7 Am. & Eng. Ency. Law, p. 854; Bank v. Colby, 21 Wall. 609; Mumma v. Potomac Co., 8 Pet. 281; Sturges v. Vanderbilt, 73 N. Y. 383; Rogers v. Adriatic Co., 148 N. Y. 38. (2) There can be no serious doubt that such a void judgment can be collaterally impeached and its invalidity shown by anyone interested, such as one entitled either as a creditor or stockholder to participate in the assets of the corporation. Crossman v. Water Co., 150 Cal. 575.

*Frank H. Farris* for respondent.

(1) Aside from the objections made to the tax proceedings upon which respondent's title rests, appellant raises the further issue that the corporation known as the Meramec Iron Company had become extinct and was dead as a matter of law, and that even though the proceedings in the tax suit were regular and valid, no suit could be maintained against such corporation and no judgment rendered against it, any more than a suit could have been maintained and a judgment rendered against a dead person. Appellant bases this contention on the theory that it became a corporation *de jure* under the statute of 1865 which provided that unless otherwise stated in the articles of incorporation the life of the corporation could run only twenty years, and that at the end of the twenty years said corporation became dissolved as a matter of fact and its franchises ceased and the title to its property vested in its board of directors as trustees. The appellant was not a corporation *de jure* but a corporation *de facto*. G. S. 1865, sec. 2, p. 327; State ex rel. v. Medical College, 59 Mo. App. 267; 3 Ruling Case Law, p. 48, sec. 48; 10 Cyc. 253; 2 Cook on

Corp. (5 Ed.), pp. 637-1416; 7 R. C. L., sec. 49. (2) The existence of this corporation could not be attacked by any person other than the State; and the corporation itself cannot deny its existence at the time of the bringing of the tax suit and the rendition of the judgment against it, and the sale of the land under such judgment. In other words, the rightful existence of the corporation cannot be raised in a collateral proceeding. 10 Cyc. 256; 7 R. C. L., sec. 49; Barbour v. Occidental Grove, 4 Mo. App. 434; Rutherford v. Williams, 62 Mo. 252; Stoutimore v. Clark, 70 Mo. 477; Stubacker Bros. v. Montgomery, 74 Mo. 103; Franklin Saving Inst. v. Board of Education, 75 Mo. 411; Catholic Church v. Tobin, 82 Mo. 424; Mining Co. v. Richards, 95 Mo. 111; Coal Co. v. Bingham, 97 Mo. 213; Finch v. Ullman, 105 Mo. 263; Black v. Early, 208 Mo. 303. (3) The doctrine is universally settled that a corporation may exist *de facto,* when not *de jure.* It has an existence which is perfectly valid in so far as the rights of third persons are concerned, but which, nevertheless, cannot be maintained against the State. That is, it may exist so long as the State acquiesces and does not institute proceedings to oust it. 10 Cyc. 520; 7 R. C. L., sec. 48; Railroad v. Railroad, 2 L. R. A. (N. S.) 146; State ex rel. v. Medical College, 59 Mo. App. 267.

FARIS, P. J.—This is an action to determine interest in certain real estate situate in Crawford County. Upon trial defendant had judgment, and plaintiff has appealed.

The common source of title is the *Meramec* Iron Company. Defendant claims through mesne conveyances from a sheriff's deed bottomed upon a judgment and sale for taxes in an action instituted by publication against the *Meramec* Iron Company. The plaintiff claims through a conveyance made in 1902 by all of the surviving directors of the *Meramec* Iron Com-

pany (sic), which conveyance was made pursuant to
a written request of all the stockholders of said last
named company.   The Meramec Iron Company at-
tempted to organize as a corporation under the pro-
visions of chapter 62 of the General Statutes of 1865,
on the 20th day of April, 1870.   On said last men-
tioned date one William Jones and five others signed
and acknowledged articles of association of the said
Meramec Iron Company, obviously with the intention
of organizing the same as a private business corpora-
tion.   These articles of association were duly filed
and recorded in the office of the recorder of deeds
of Phelps County, Missouri, on December 12, 1871,
but no copy thereof was ever filed in the office of
the Secretary of State.   In September, 1872, a meeting
of the incorporators of said company was duly held
pursuant to notice, at St. James, Missouri, which
town was designated as the place of the principal
office of the company.   Other meetings of the stock-
holders of the Meramec Iron Company were held from
time to time during the following twenty years at
divers places, among others, at the Southern Hotel
in St. Louis, pursuant to changes made and entered of
record in the minutes of the company.   So far as
the record before us discloses, the last meeting ever
held by the board of directors of this company was
held on the 14th day of October, 1891, in the city of
St. Louis.

On the 2nd day of January, 1894, an action was
begun in the circuit court of Crawford County by
the collector of revenue of that county against the
*Meramec* Iron Company for taxes upon the land here
in controversy.   This action was commenced by filing,
among other things, an affidavit for an order of pub-
lication, which order was duly made so far as concerns
the point here, and duly published for a sufficient
length of time.   This order recited that the *Maramec*
Iron Company was defendant therein.   It will be noted

that the name "Meramec" is misspelled in said order and that no designation of said Meramec Iron Company as a corporation appears therein. The allegation of non-residence in this order of publication is, to-wit: "That the defendant is a non-resident of the State of Missouri so that ordinary process of law cannot be served upon *him or them as the case may be.*" In due course, judgment by default was rendered against the *Maramec* Iron Company for the delinquent taxes for which the suit last above mentioned was instituted. Thereafter a sale of this land was had and thereat it was purchased by one M. A. Leftwich, who subsequently conveyed it to one A. H. Harrison (now, apparently attorney for appellant herein), who in turn conveyed it to defendant. Defendant subsequently conveyed it, but later, and prior to this action, again purchased it and yet owned it at the time he was sued herein.

It is conceded that the surviving directors of the *Maramec* Iron Company who conveyed the land in controversy to the plaintiff, were all of the surviving directors of the Meramec Iron Company. And since no point seems to be made upon this conveyance we need not set it forth (nor the facts concerning it) more at length. In passing it may be stated that in the written request to the said surviving directors of the Meramec Iron Company to convey the land in dispute to plaintiff here, the word *Meramec,* is spelled once as last above herein and once it is spelled *Maramec*. Also, it may be observed, that in the deed of conveyance made pursuant to the above request by said surviving directors of the Meramec Iron Company, the word "Meramec" as it appears in the title of said Iron Company, is spelled *thirteen* times Maramec and not once otherwise. Which fact, we predict, will prove unlucky for plaintiff if we shall come so far as to reach it in our discussion.

Upon a trial of the case before the court (at which trial no instructions were asked or given on either side), judgment was rendered for defendant, adjudging him to be the owner in fee of the land in dispute. Such judgment, inevitably, as a necessary incident, required a finding by the court that the sale of the land for taxes was in all things valid (as against a collateral attack) and sufficient to divest title out of the Meramec Iron Company and to vest it, through mesne conveyances, in defendant.` All other questions seem to be conceded throughout the record; at least there is no controversy made in the briefs upon either side about them.

To a determination of this question, in the light of the various attacks thereon, our discussion of the case will be directed. In the discussion of it, if other facts shall become necessary we shall state them.

I. Many novel and interesting questions are mooted in the briefs of learned counsel upon the record before us. Among these are: (a) Is *Maramec Iron Company idem sonans* with *Meramec* Iron Company? (b) Does an attempt to organize a corporation, which fails to create a *de jure* corporation for lack of following the law, have the effect to create a *de facto* corporation? (c) Is it necessary to sue such a body as a corporation? (d) Is service by publication upon such a (legally) abortive aggregation bad for that it follows the statute which prescribes the manner of service upon a nonresident individual, rather than that prescribing the manner of service by publication upon a *de jure* corporation? (e) Does such an abortive aggregation expire and become *ipso facto* dissolved by statutory limitation in twenty years (absent other time fixed in the articles of association) under the statute of 1865? [Sec. 1, p. 326, G. S. 1865.] (f) If it does so expire in whom does the title to its land vest? (g) Is such

*Questions Mooted.*

an aggregation dissolved and dead in the sense that after such dissolution by limitation it may not be sued for taxes in the quasi name of the aggregation, in which name it carried its real estate upon the land records? In short, after expiration by limitation is such an aggregation dissolved and dead within the purview of sections 11498 and 11499, Revised Statutes 1909, and of our ruling that a dead person cannot be sued for taxes, even though he be seemingly the record owner? [Sec. 11498, supra.]

It will be instantly appreciated that all of these questions are interesting; many of them are novel, and some of them are very close and difficult; largely because in any view which we may take, we must in our consideration thereof seem to beg many questions and assume as facts things. which are in reason contradictory antitheses of each other.

II. We take the last point first, and recur to some of the pertinent facts, which were that more than 21 years elapsed after the Meramec Iron Company filed its articles of association in the office of the recorder of deeds of Phelps County

**De Facto Corporation.** and after it held meetings of its board of directors as a pseudo-legal corporation, till it was sued for taxes on January 2, 1894. These articles of association did not set forth the period during which the proposed corporation should exist, and it follows that under the statute then (and now) (Sec. 2990, R. S. 1909) in force, its life as a corporation was limited to twenty years (Sec. 1, p. 326, G. S. 1865), if we are permitted to apply the same rule to a *de facto* corporation as we apply to a *de jure* corporation. This period of twenty years had expired some two years before the suit for taxes was begun against it. Learned counsel for respondent concedes, in making another point, that while the Mera-

268 Mo.—26

mec Iron Company was not organized as a corporation
pursuant to the statutes then in force, and while its
corporate existence would not have been proof against
a direct attack by the State, nevertheless since it held
itself out to the world as a corporation and proceeded
to deal and act and hold property as a corporation, its
existence as a corporation cannot be collaterally at-
tacked.   In this view we are forced to acquiesce.
While confessedly, for lack of a charter issued by the
Secretary of State, the Meramec Iron Company never
became a private corporation *de jure,* yet by reason
of the existence of statutes which permitted it to be
organized, for user of the powers it assumed, by its
taking part of the necessary steps to organize as a
corporation, it became (at least) as to all persons at-
tempting to attack it collaterally, a *de facto* corpora-
tion, and thus (in such case and against such per-
sons) entitled to all the rights, privileges and liabil-
ities of a corporation *de jure.*

Did it so far expire by statutory limitation as that
it could not be sued as a corporation twenty-two years
after its attempted organization? We think that this
question must be likewise answered in the
affirmative.   It has been held in this
State under our statute (Sec. 19, p. 329, G.
S. 1865) that after the expiration by
statutory limitation of a corporation's life, its prop-
erty goes to its directors as trustees for the stock-
holders, and does not, as at common law, revert to
the grantor.   [Bradley v. Reppell, 133 Mo. l. c. 552;
Richards v. Coal Co., 221 Mo. l. c. 158.] From this
alone it follows on principle that the defunct cor-
poration could not be sued after its dissolution and
death by the expiration of its charter; in such wise,
at least as to foreclose a lien against lands it no longer
owned; but which by operation of law had passed to
its late directors as trustees for its shareholders.   For
the corporate entity is dead *ipso facto* (10 Cyc. 1271)

*Dead
Corporation:
Tax Suit.*

when its statutory years are accomplished and its holdings of whatever sort, by force of the statute, pass to others. [Sec. 19, p. 329, G. S. 1865; Bradley v. Reppell, 133 Mo. 1. c. 552; McCoy v. Farmer, 65 Mo. 244.]

While thus on obvious principle it would appear to follow that no action can be maintained against a corporation after it expires by statutory limitation, and that a judgment against such defunct corporation is absolutely void, we have not in this State been able to find a case so holding in express terms. But in the Federal courts, and in other jurisdictions, as shown by the text-books and the cases themselves, this rule seems to be settled beyond dispute. In the case of Pendleton v. Russell, 144 U. S. 1. c. 644, it was said:

"Looking at the judgment of the circuit court of the United States, we are satisfied that the ruling of the Court of Appeals was correct. That judgment purports to be against the insurance company, but that company, at the time, had no legal existence. It had been dissolved and its franchises, rights and privileges declared forfeited by a decree of the Supreme Court of New York, in a proceeding brought by the Attorney General of the State, in the name of the people, and a receiver appointed of the effects of the corporation. The judgment was therefore no more valid against a non-existing corporation than it would have been if rendered for a like amount against a dead man. The receiver was not substituted in the place of the dissolved corporation; no process or citation was issued by that court to bring him before it, nor any proceeding taken for that purpose. Nor would such a proceeding have had any effect, for, the corporation having expired, the suit itself had abated."

In the case of Crossman v. Vivienda Water Co., 150 Cal. 1. c. 580, it was held: "It is settled beyond question that, except as otherwise provided by statute, the effect of the dissolution of a corporation is to ter-

minate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name. It is dead, and can no more be proceeded against as an existing corporation than could 'a natural person after his death. There is no one who can appear or act for it, and all actions pending against it are abated, and any judgment attempted to be given against it is void. As to this, all the text-writers agree, and their statement is supported by an overwhelming weight of authority. [See 5 Thompson on Corporations, secs. 6721, 6722, 6723; 2 Clark & Marshall on Private Corporations, secs. 322, 329; Angell & Ames on Corporations, sec. 195; 2 Morawetz on Corporations, sec. 1031; 10 Cyc. 1316; 7 Am. & Eng. Ency. of Law, p. 854; Pendleton v. Russell, 144 U. S. 640; National Bank v. Colby, 21 Wall. 609; Mumma v. Potomac Co., 8 Pet. 281; Sturges v. Vanderbilt, 73 N. Y. 384; Rodgers v. Adriatic F. Ins. Co., 148 N. Y. l. c. 38.]''

Likewise it was so held in the late case of Venable Bros. v. Southern Granite Co., 135 Ga. 508, 32 L. R. A. (N. S.) 446. In an excellent note to the above case to be found in the citation last above, it is said: ''The doctrine is well established that in the absence of statutory regulation, the expiration of corporate life by lapse of time or decree of dissolution works an abatement of pending actions at law or against it, the reason being that its existence as a legal entity is ended, and therefore a judgment subsequently rendered will be void.'' [Nelson v. Hubbard, 96 Ala. 238; Wilcox v. Continental Life Ins. Co., 56 Conn. 468; Terry v. Bank, 66 Ga. 177; Eagle Chair Co. v. Kelsey, 23 Kan. 632; Bank v. Trimble, 6 B. Mon. 599; Musson v. Richardson, 11 Rob. (La.) 37; Read v. Bank, 23 Me. 318; Olds v. Trust Co., 185 Mass. 500; Torry v. Robertson, 24 Miss. 192; Greenbrier Lumber Co. v. Ward, 30 W. Va. 43; National Bank v. Colby;

21 Wall. 609; Pendleton v. Russell, supra.] Nor is it in our view necessary to overrule the case of Board of Commrs. v. Shields, 62 Mo. 247,/%or St. Louis Gas Light Co. v. St. Louis, 84 Mo. 202. For in the instant case the Meramec Iron Company does not assert its continued existence, nor had it used its corporate offices for some three years before it was sued on the 2nd day of January, 1894. In the Shields case and in the Gas Light Co. case, supra, the pseudo-corporations were using their corporate powers and asserting their corporate existences, and the opposing parties had been dealing with them as corporations; while in the instant case the Meramec Iron Company tacitly concedes its death, as also expressly do its directors and shareholders. But it is plain and obvious that if the two cases last mentioned are opposed to the view that after the expiring of a corporation through statutory old age, a judgment against it is not void, then those cases are opposed, not only to the universal weight of authority, but to all reason and principle. Of course, if it be true as the cases hold, that a judgment which is rendered against a corporation after its dissolution by statutory expiration is void, it follows that such judgment being void may be attacked collaterally.

If it be urged that since in truth, for lack of compliance with section 2 of chapter 62 of the Revised Statutes of 1865, the Meramec Iron Company never became a *de jure* corporation, but became nevertheless by virtue of its efforts to follow the law, **Death of** and of its user of corporate powers a *de* **De Facto** **Corporation.** *facto* corporation, and that having become such *de facto* corporation it would continue by user to be a suable *de facto* corporation indefinitely, the answer is that a *de facto* corporation exists because (and only when) there is a law or statute permitting its incorporation for the purposes and with the powers assumed, but which law was not fol-

lowed (though attempted so to be) in its organization. Therefore a *de facto* corporation, just as does a *de jure* corporation, ceases to exist as soon as the law which allows it to exist has failed. Here the law forbids either private or collateral attack, it is true, but if the Meramec Iron Company had been a *de jure* corporation it could not have existed longer than twenty years, because under the facts here there was no warrant of law for a longer life for this sort of corporation, and the moment its span of life reached the statutory limit it would, *ipso facto,* have ceased to exist instantly. [10 Cyc. 1271.] Since, we repeat, no *de facto* corporation can exist, except where there is law allowing a corporation to be formed and to use the powers of a corporation for the purposes set out in its articles of association, so no *de facto* corporation can continue to exist even by continued user, after the term fixed by law as the period of its existence, has expired. For "the first requisite," says Constantineau in his excellent work on the De Facto Doctrine, "to constitute a *de facto* corporation is the existence of a law authorizing the incorporation. When, therefore there is no law providing for the organization of municipal corporations, there cannot be any such corporation either *de facto* or *de jure*." [Constantineau on the De Facto Doctrine, sec. 50.] Elsewhere this author says that "the law recognizes no distinction between public and private corporations in the application of the *de facto* doctrine." [Ibid., sec. 47.] Moreover, it is obvious that the view that by user and usurpation a corporation of whatever sort can be kept alive indefinitely, would have the effect to render nugatory and to practically emasculate *all statutes* providing for the organization of private corporations. For such a view applied to the concrete facts here would be tantamount to saying: Observe the law, become a *de jure* corporation and die of old

age in twenty years; refuse to follow the law, become a *de facto* corporation and live forever.

We conclude then that since the judgment for taxes was rendered against the Meramec Iron Company, which was organized as a corporation *de facto* under chapter 62 of the Revised Statutes of 1865, after said company had become dissolved by statutory efflux of time, such judgment was void and the subject of collateral attack, and a sale for taxes of the land in controversy bottomed on said judgment did not pass title to the purchaser thereof. This view disposes of the case and renders unnecessary a consideration of the other interesting points mooted.

It follows that the judgment *nisi* was wrong, and that this case should be reversed and remanded with directions to enter judgment for plaintiff decreeing it to be the owner of said land and adjudging that defendant has no title or estate therein. Let this be done. All concur, *Revelle, J.,* in result.