FARMERS UNION COOPERATIVE ASSOCIATION, A NEBRASKA CORPORATION, NICKERSON, NEBRASKA, APPELLANT, V. MID-STATES CONSTRUCTION COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES.

322 N.W.2d 373

Filed July 16, 1982. No. 44243.

Robert M. Hillis of Yost, Schafersman, Yost, Lamme & Hillis, for appellant.

C. L. Robinson of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee Peerless.

Harry B. Otis of Gaines, Otis, Haggart, Mullen & Carta, for appellee Mid-States.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

This is an appeal from an order in which the trial

court granted the defendants' motions for summary judgment, dismissed the plaintiff's first and third causes of action, and sustained a demurrer to the plaintiff's second cause of action. Plaintiff appeals and assigns as error the dismissal of its petition.

A discussion of the facts elicited in the depositions and pleadings is necessary for an understanding of this complicated matter.

Plaintiff, Farmers Union Cooperative Association (Co-op), entered into a contract on February 7, 1966, with Mid-States Construction Company (Mid-States), a Nebraska corporation. The contract obligated Mid-States to erect a 250,000 bushel capacity concrete grain elevator at Nickerson, Nebraska. At paragraphs 2, 3, and 9, the contract provided:

"2. The Contractor shall furnish a Contractor's Performance and three year(s) Maintenance Bond covering the above work, the premium for which shall be paid for by the Owner exclusive of this Contract Price.

"3. The Contractor warrants that for a period of 3 year(s) from the date of the Contract that he will be responsible for any structural failure in the building(s), either partial or complete, and will keep in good repair the work contracted to be done, all as may be caused by faulty design, inadequate plans or by defective materials, work or workmanship, except such minor apparent defects as are inherent with this type of construction, and it being understood that Equipment furnished by the Contractor shall be Guaranteed to the Owner only to the extent to which it is Guaranteed to the Contractor by the Equipment Manufacturer.

. . . .

"9. The work shall commence within 15 days after the Contract is signed and estimated to be substantially complete, to an operational condition, . . . by Aug. 31, 1966 subject only to conditions of paragraph 7 above, or 11 below."

The defendant Peerless Insurance Company (Peerless) furnished a bond, pursuant to the contract between Co-op and Mid-States, on March 9, 1966. The bond recited in pertinent part: "WHEREAS, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 7th day of February 1966 to construct a complete reinforced concrete grain elevator of 250,000 bushel capacity, as per terms of contract[,] which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

"Now, therefore, the condition of the above obligation is such, that if the above bounden Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

Mid-States completed construction of the elevator in June 1966 and Co-op assumed possession at that time.

Mid-States was dissolved by the Secretary of State for nonpayment of taxes on August 3, 1970, and has not been revived.

On November 28, 1977, an incident occurred which precipitated this litigation. A large segment of the concrete in the elevator broke away, leaving a large hole in the elevator.

On January 3, 1979, Co-op filed suit in the District Court for Dodge County against Mid-States and Peerless. Service was had on "Harry B. Otis, Registered Agent," for Mid-States and on the Director of

Insurance for the State of Nebraska as agent for Peerless.

In the petition, Co-op asserted three separate theories of action, which it labeled causes of action, against both defendants. In its first cause of action, Co-op asserted that the defendants fraudulently represented to Co-op that the elevator's specifications were adequate and that the plans were specifically followed, but that in fact substantial amounts of horizontal reinforcing steel were not installed in the structure, thereby causing the breakout in the elevator side. In the second cause of action, essentially the same facts were alleged as a breach of the contract to construct the elevator according to the plans and in a workmanlike manner. In the third cause of action, the Co-op sought recovery on a theory of negligent construction.

A special appearance by Mid-States was overruled. Further service was attempted on Mid-States by delivering summonses to persons designated as trustees and assignees of Mid-States. Mid-States filed a motion for summary judgment, which was sustained. The defendant Peerless's demurrer to the second cause of action was sustained, and its motion for summary judgment as to the first and third causes of action was also sustained and the petition of Co-op dismissed.

We will first consider the court's action with respect to Mid-States. Implicit in the trial court's consideration of this matter, quite apart from obvious questions relating to statutes of limitations, is the status of a dissolved corporation. Various procedures for the dissolution of a corporation are provided for by Nebraska statutes. Mid-States was dissolved pursuant to the provisions of Neb. Rev. Stat. § 21-323 (Reissue 1970) for nonpayment of taxes. In addition, the statutes provided for dissolution voluntarily by the stockholders, Neb. Rev. Stat. § 21-2082 (Reissue 1970), and for involuntary dissolu-

tion by the action of the Attorney General, Neb. Rev. Stat. § 21-2093 (Reissue 1977), or by shareholders or creditors, Neb. Rev. Stat. § 21-2096 (Reissue 1977).

Mid-States was dissolved for nonpayment of taxes nearly 9 years before suit and 7 years prior to the failure of the elevator. Neb. Rev. Stat. § 21-20,104 (Reissue 1977) provides in part: "The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in sections 21-2001 to 21-20,134, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution."

In discussing the question of whether a dissolved corporation can be sued after the specified period by statute has passed, we said in *Christensen v. Boss,* 179 Neb. 429, 435-36, 138 N.W.2d 716, 720 (1965) (a voluntary dissolution case): "At common law a corporation's capacity to sue or be sued terminates when the corporation is legally dissolved. See, 16A Fletcher, Cyclopedia Corporations (Perm. Ed.), § 8142, p. 311; Beasley v. Fox, 173 F.2d 920; Leiserson & Adler, Inc. v. Keam (Ky.), 266 S.W.2d 352; In re National Surety Co., 286 N.Y. 216, 36 N.E.2d 119.

"Where a corporation has in fact been dissolved and no longer exists as a legal entity, the rule of its incapacity to sue or be sued applies regardless of the mode of dissolution whether by judicial decree or otherwise. See, 16A Fletcher, Cyclopedia Corporations (Perm. Ed.), § 8142, p. 315; MacAffer v. Boston & Maine R.R. Co., 268 N.Y. 400, 197 N.E. 328. In the absence of statutory provisions to the contrary no action at law can be maintained by or against it as a

corporate body or in its corporate name. See, 16A Fletcher, Cyclopedia Corporations (Perm. Ed.), § 8142, p. 312; Peoria Engraving Co. v. Streator Cold Storage Door Co., 221 Iowa 690, 266 N.W. 548; Garrett v. Pilgrim Mines Co., 47 Idaho 595, 277 P. 567; Meramec Spring Park Co. v. Gibson, 268 Mo. 394, 188 S.W. 179; Pendleton v. Russell, 144 U.S. 640, 12 S. Ct. 743, 36 L. Ed. 574." We there held that a suit not brought within the 5-year statutory period as provided by Neb. Rev. Stat. § 21-186 (Reissue 1962) was subject to dismissal.

We acknowledge that a number of states have held that a corporation whose charter is revoked for nonpayment of taxes is a de facto corporation and continues legal existence during the forfeiture period. However, a corporation is a creature of the Legislature. Any change in substantive law relating to the status of such a dissolved corporation is particularly within its domain.

The petition was properly dismissed against Mid-States; thus other errors assigned as to it need not be discussed.

In discussing the actions against Peerless, we first observe that no allegations specifically describing either fraud, negligence, or breach of contract are directed against Peerless. The liability of Peerless to Co-op is described by the surety bond it executed and the pertinent provisions of the contract incorporated by reference.

The guarantee undertaken by Peerless appears to be (1) performance of the contract by August 31, 1966, and (2) a warranty from defects for a period of 3 years after performance. The contract is quite clear that Peerless will guarantee the Co-op "for a period of 3 year(s) from the date of the Contract . . . for any structural failure in the building(s) . . . ."

"General or indefinite words in the instrument as to the time during which the surety shall remain liable will be limited by a recital specifying the time

during which the prescribed duty is to be performed by the principal." 74 Am. Jur. 2d *Suretyship* § 29 at 31 (1974).

In *Rawleigh Co. v. Smith,* 142 Neb. 529, 531, 9 N.W.2d 286, 287 (1943), in discussing the liability of a surety, we said: "A surety cannot be held beyond the precise terms of his contract. Any intention on the part of the surety to assume a further and continued liability must be found in the words of the contract made. It is not a matter of inference, but of express statement. The liability of a surety, therefore, is measured by, and will not be extended beyond, the strict terms of his contract."

Putting aside obvious questions of the statute of limitations, Peerless guaranteed the structure for 3 years; it does not make any difference for the purposes of this opinion whether from the date of the contract as recited or from the date of completion. There was no structural failure within the 3-year period guaranteed by Peerless. Co-op must seek relief under, and we must enforce only, that guarantee which was actually promised. No structural defect having arisen within the contract period, the trial court was correct in its dismissal of the action against Peerless.

AFFIRMED.

BOSLAUGH, J., concurs in the result.