VIRGINIA HORTON, APPELLANT, V. FORD LIFE INSURANCE CO., APPELLEE.

518 N.W.2d 88

Filed June 17, 1994.   No. S-92-1106.

Robert J. McCormick, of Anderson, Klein, Peterson & Swan, for appellant.

Michael Heavey, of Dwyer, Pohren, Wood, Heavey, Grimm, Goodall & Lazer, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

FAHRNBRUCH, J.

Virginia Horton claims it was error for a district court to sustain a demurrer to her third amended petition and dismiss her lawsuit against Ford Life Insurance Co. (Ford Life) for the proceeds of a credit life insurance policy on the decedent, Roger E. Horton, M.D.

We reverse the ruling of the district court for Douglas County dismissing Horton's cause of action and remand the cause for further proceedings.

## FACTS

On April 10, 1992, Horton filed a petition in the trial court seeking a $10,000 judgment against Ford Life, together with interest and attorney fees. In her petition, Horton alleged that (1) Dr. Horton died April 23, 1987, from injuries he sustained when a shotgun accidentally discharged; (2) prior to Dr. Horton's death, Ford Life sold him a disability insurance policy containing life insurance coverage; (3) the policy contained a provision promising to pay Brooks Ford, Inc., a benefit in the amount of $10,000 upon the death of Dr. Horton; (4) the policy was in effect at the time of Dr. Horton's death; (5) immediately after Dr. Horton's death, Brooks Ford submitted a claim to Ford Life "requesting the balance due on the 1986 automobile be paid in full"; (6) the balance due on the automobile at the time of Dr. Horton's death was about $10,000; and (7) Ford Life "refused to pay the balance due on the loan which [Dr. Horton] maintained with Brooks Ford," and as a result, Horton was required to pay the balance due on the loan.

A copy of the insurance policy Dr. Horton purchased from Ford Life was attached to and referred to in Horton's petition. The policy has an effective date of October 7, 1986, a term of 36 months, and is in the original amount of $12,266.40. The policy states: "Claim payments are made to the Creditor to pay off or reduce your debt. If claim payments are more than the balance of your debt, the difference will be paid to you or to a Second Beneficiary or to your estate." The policy does not describe or identify the debt it purports to cover other than to declare that

Brooks Ford is the creditor beneficiary of the policy.

On May 18, Ford Life, claiming that Horton failed to state facts sufficient to constitute a cause of action against Ford Life, demurred to Horton's petition. Following a hearing, the district court sustained Ford Life's demurrer and granted Horton 2 weeks to file an amended petition.

On June 23, Horton filed an amended petition alleging substantially the same facts alleged in her original petition, but adding that because she paid the debt of Dr. Horton, she became subrogated to any claim he might have against Ford Life by virtue of the policy it issued.

On June 29, Ford Life demurred to the amended petition for its failure to state facts sufficient to constitute a cause of action. The district court sustained the demurrer and granted Horton 14 days to file a second amended petition.

In her second amended petition, Horton added that pursuant to Neb. Rev. Stat. §§ 30-24,125 and 30-24,126 (Reissue 1989), she was entitled to bring this lawsuit for and on behalf of Dr. Horton. She further alleged that on November 6, 1989, Horton, then known as Virginia Cookson, signed an "Affidavit for Collection of Personal Property" pursuant to the Nebraska Probate Code.

A conformed copy of that affidavit was attached to and referred to in Horton's second amended petition. The affidavit states that Virginia Cookson is *the* successor of Dr. Horton and that as such, and pursuant to §§ 30-24,125 and 30-24,126, she is entitled to any money due and owing to him, any tangible personal property of his, and all instruments evidencing a debt, obligation, stock, or chose in action belonging to Dr. Horton.

Also attached to the second amended petition was a document entitled "Affidavit for Transfer of Decedent's Motor Vehicle." That "affidavit" states that Virginia Cookson is the surviving spouse of Dr. Horton and that Dr. Horton died seized of a 1986 Ford Tempo. This "affidavit" is not signed by Horton, dated, notarized, or specifically referred to in Horton's second amended petition.

On August 7, Ford Life demurred to Horton's second amended petition. After a hearing at which only Ford Life's counsel appeared, the district court sustained the demurrer and

granted Horton until September 11 to file a third amended petition.

On October 28, Horton filed a motion for leave to file a third amended petition, asserting that her counsel had moved his office prior to receiving Ford Life's demurrer to the second amended petition and that she had not received notice of the hearing on the demurrer until October 20.

On November 5, the district court held a hearing at which (1) the court sustained Horton's motion to file a third amended petition, (2) Horton filed her third amended petition, and (3) Ford Life demurred to the third amended petition.

Horton's third amended petition is identical to her second amended petition, except that she did not attach a copy of the insurance policy to her third amended petition. No copy of the "Affidavit for Transfer of Decedent's Motor Vehicle" was attached to, nor was it referred to in, Horton's third amended petition.

Upon Ford Life's demurrer to Horton's third amended petition, the trial court sustained the demurrer and dismissed Horton's lawsuit.

## ASSIGNMENTS OF ERROR

Horton claims that the district court erred in (1) sustaining the demurrer of Ford Life and (2) dismissing her lawsuit.

## SCOPE AND STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of facts well pled and the factual and legal inferences which may be reasonably deduced from such facts, but does not accept conclusions of the pleader. See, *Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994); *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994).

In considering a demurrer, a court cannot assume the existence of a fact not alleged, make factual findings to aid the pleadings, or consider evidence which might be adduced at trial. *Id.*

A statement of "facts sufficient to constitute a cause of action," as used in Neb. Rev. Stat. § 25-806(6) (Reissue 1989), means a narrative of events, acts, and things done or omitted

which show a legal liability of the defendant to the plaintiff. *Lawyers Title Ins. Corp., supra; Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993).

In ruling on a demurrer, the petition is to be construed liberally; if, as so construed, the petition states a cause of action, the demurrer is to be overruled. *Wheeler, supra.*

A demurrer reaches an exhibit filed with the petition and made a part thereof, so that a court can consider such exhibit in determining whether the petition states a cause of action. See, *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991); *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398 (1977); *Prucha v. Department of Motor Vehicles*, 172 Neb. 415, 110 N.W.2d 75 (1961). Exhibits attached to a petition in a case, and being a part of the files therein, which are designated and referred to in an amended petition as exhibits attached thereto, and by reference made a part of the pleading, will be treated as such, in the absence of a motion directed to the same, in determining whether such amended pleading states a cause of action, even though not physically attached to such amended petition. *Bank of Stockham v. Alter*, 61 Neb. 359, 85 N.W. 300 (1901). Accord *Gilbert Central Corp. v. Overland Nat. Bank*, 232 Neb. 778, 442 N.W.2d 372 (1989). Pursuant to these cases, Dr. Horton's insurance policy will be considered as if it were attached to Horton's third amended petition.

## ANALYSIS

Based on the foregoing rules, we review Horton's third amended petition, together with (1) the copy of Dr. Horton's insurance policy, which was attached to Horton's original petition, and (2) the affidavit Horton prepared pursuant to §§ 30-24,125 and 30-24,126, which was attached to and referred to in Horton's third amended petition. After such review, we find that, although perhaps unartfully drafted, Horton's petition nevertheless does state facts sufficient to constitute a cause of action under two theories.

The facts alleged by Horton are sufficient to state a cause of action that she is subrogated to whatever rights Brooks Ford possessed as the creditor beneficiary of the Ford Life insurance policy. The facts alleged by Horton in her third amended

petition are also sufficient to state a cause of action that she is entitled to collect claim payments owed to Dr. Horton's estate pursuant to a specific provision of the policy.

## SUBROGATION

Ordinarily, one seeking subrogation must plead it and set forth the facts from which the right of subrogation arises. *Cagle, Inc., supra.* Subrogation is the substitution of one person who is not a volunteer, a subrogee, for another, a subrogor, as the result of the subrogee's payment of a debt owed to the subrogor so that the subrogee succeeds to the subrogor's right to recover the amount paid by the subrogee. *Shelter Ins. Cos. v. Frohlich,* 243 Neb. 111, 498 N.W.2d 74 (1993). Generally, subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other. *Id.*

Absent an agreement, the doctrine of subrogation applies only when a party pays the debts of a third person, not as a volunteer, but either out of a legal or moral obligation to do so or to protect his or her own rights or interests or to save his or her own property. See, *Chadron Energy Corp. v. First Nat. Bank,* 236 Neb. 173, 459 N.W.2d 718 (1990); *J.J. Schaefer Livestock Hauling v. Gretna St. Bank,* 229 Neb. 580, 428 N.W.2d 185 (1988); *Rawson v. City of Omaha,* 212 Neb. 159, 322 N.W.2d 381 (1982); *Cagle, Inc., supra.*

To state her right of subrogation, Horton must have pled facts sufficient to show the following material elements: (1) Brooks Ford had a right to be paid a benefit from Ford Life under the insurance policy issued by Ford Life to Dr. Horton; (2) Ford Life failed to pay that benefit to Brooks Ford; (3) Horton paid Brooks Ford the amount of the benefit, or in other words, the debt owed by Ford Life to Brooks Ford under the policy; and (4) Horton paid that debt either out of a legal or moral obligation to do so *or* to protect her own rights or interests or to save her own property.

Horton clearly pled facts sufficient to show the first two elements. With regard to the third element, the insurance policy attached to and made part of Horton's petition insures a debt that Dr. Horton owed to the named creditor beneficiary,

Brooks Ford. In her third amended petition, Horton further alleged that she paid the balance due on "*the* loan which [Dr. Horton] maintained with Brooks Ford." (Emphasis supplied.)

It can reasonably be inferred from the alleged facts that Dr. Horton had but one loan with Brooks Ford, that the Ford Life insurance policy covered that loan, and that therefore the debt Horton paid was the same debt insured by Ford Life. The alleged facts in Horton's third amended petition, and the reasonable inferences to be drawn therefrom, are sufficient to show that Horton paid the benefit—or in other words, the debt—owed by Ford Life under the insurance policy involved here.

As to the fourth element necessary to show Horton's right of subrogation, Ford Life argues that Horton failed to state facts sufficient to show she had an interest or property to be protected by having paid the balance due on the loan Dr. Horton maintained with Brooks Ford. Specifically, Ford Life argues that to state her right of subrogation, Horton had to plead that the loan Dr. Horton maintained with Brooks Ford was secured by a lien on a 1986 automobile and that Horton had acquired an interest in that 1986 automobile. Without these allegations, Ford Life argues, Horton failed to show that payment of Dr. Horton's loan would prevent repossession of the automobile and, thereby, protect her interest in the automobile.

This argument is without merit because Horton pled facts sufficient to show that she had an interest *in Dr. Horton's estate*, regardless of whether she had an interest in any particular automobile Dr. Horton may have owned. Attached to and incorporated by reference into Horton's third amended petition was a conformed copy of an "Affidavit for Collection of Personal Property." That document states that Horton, then known as Virginia Cookson, is "*the* successor of Roger E. Horton, deceased." (Emphasis supplied.) Horton also pled that she signed this document pursuant to the Nebraska Probate Code.

The Nebraska Probate Code defines successors as "those persons, other than creditors, who are entitled to property of a decedent under his will or this code." Neb. Rev. Stat.

§ 30-2209(46) (Reissue 1989). Therefore, it can reasonably be inferred from Horton's pleaded facts that Horton, as *the* successor of Dr. Horton, succeeded to the estate of Dr. Horton under his will or the Nebraska Probate Code. It can also be reasonably inferred that by paying off the loan Dr. Horton maintained with Brooks Ford, Horton protected her interest in his estate from the consequences of a default on that loan, including a potential claim against the estate.

### HORTON'S ESTATE RIGHTS

Under the heading of "Who Gets Paid," the insurance policy provides that "[i]f claim payments are more than the balance of your debt, the difference will be paid to you or to a Second Beneficiary or *to your [Dr. Horton's] estate.*" (Emphasis supplied.)

In pleading that she paid the balance due on Dr. Horton's loan with Brooks Ford, Horton pled facts showing that the balance of Dr. Horton's debt under the insurance policy was zero at the time she filed this lawsuit. Horton pled further that the amount still owed by Ford Life under the policy was $10,000. Pursuant to the foregoing policy provision, Horton has pled facts showing that as the successor to the estate of Dr. Horton, she has a right to the difference between any claim payments due under the policy at the time of Dr. Horton's death and the balance of Dr. Horton's debt, which she alleged was reduced to zero upon her repayment of Dr. Horton's loan to Brooks Ford. As a matter of law, Ford Life cannot escape paying the benefits due under the policy upon Dr. Horton's death solely because his successor fully paid the debt to Brooks Ford that Ford Life contracted to pay.

In its brief, Ford Life claims that §§ 30-24,125 and 30-24,126 are not applicable because Horton has not shown that Dr. Horton's estate is less than $10,000. In an apparent effort to defeat any interest that Horton has in her claim against Ford Life, Ford Life argues that filings by Horton indicate Dr. Horton's estate is valued in excess of $10,000. Horton's affidavit as successor to Dr. Horton's estate alleges that the "fair market value of the entire estate of the decedent [Dr. Horton], wherever located, *less liens and encumbrances*, does

not exceed ten thousand dollars." (Emphasis supplied.) Section 30-24,126 provides that anyone paying pursuant to an affidavit prepared under § 30-24,125 is "not required to see to the application of the personal property or evidence thereof or to inquire into the truth of any statement in the affidavit." Ford Life, as one allegedly owing a debt to Dr. Horton's estate, upon payment of a debt owed to Dr. Horton's successor, is protected because it is not required to inquire into the truth of the statements in Horton's affidavit.

Furthermore, as stated previously, a court can consider an exhibit attached to and made part of a petition in determining whether the petition states a cause of action. See, *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991); *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398 (1977); *Prucha v. Department of Motor Vehicles*, 172 Neb. 415, 110 N.W.2d 75 (1961). Whether attached exhibits must meet certain statutory or other legal requirements in order to be used as *proof* of the allegations contained therein is a question we need not consider in reviewing an order sustaining a demurrer.

## CONCLUSION

Giving a liberal construction to Horton's third amended petition, together with the exhibits attached to and referred to in Horton's third amended petition and its predecessor petitions, we find that Horton alleged facts sufficient to state a cause of action (1) that she is subrogated to whatever rights Brooks Ford possessed as a creditor beneficiary of the Ford Life insurance policy and (2) that under §§ 30-24,125 and 30-24,126, as the successor of Dr. Horton, she is entitled to collect claim payments owed to Dr. Horton's estate pursuant to a specific provision of the policy.

We reverse the district court's judgment dismissing Horton's cause of action and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

BOSLAUGH, J., participating on briefs.